IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

———————————————————————

UNITED STATES OF AMERICA

  -v-                                                                                          24-CR-116

MATTHEW W. STEELE,

               Defendant.

———————————————————————

## GOVERNMENT'S MEMORANDUM
## IN SUPPORT OF VICTIM RESTITUTION

**THE UNITED STATES OF AMERICA**, by and through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorney, respectfully files this memorandum in support of the Victim 1's request for restitution.[1] The government respectfully requests that the Court order the defendant to pay restitution to Victim 1 in the amount requested of $527,105 to $746,779.

### PRELIMINARY STATEMENT

The Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 ("AVAA"), Public Law 115-299, enacted on December 7, 2018, created new penalties and made a number of changes to existing child pornography laws, specifically with regard to restitution. As amended by the AVAA, 18 U.S.C. § 2259 now states, in relevant part:

---

[1] As noted in the Presentence Report, Pia, the victim in the Sweet White Sugar series of child pornography, also submitted a restitution request of $7,500 through Pia's counsel. However, based on the fact that Victim 1 is the victim in a newly identified series of child pornography, the defendant is responsible for the production of that series of child pornography, and Victim 1 has yet to receive any restitution, the government contacted counsel for Pia on April 24 and May 13, 2026, requesting that Pia withdraw her restitution request in this case. Pia's counsel has yet to respond to the government. Therefore, through this submission, the government formally withdraws the restitution request submitted by Pia.

> If the defendant was convicted of trafficking in child pornography, the court shall order restitution under this section in an amount to be determined by the court as follows:
>
> (A) Determining the full amount of a victim's losses.—
> The court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim.
>
> (B) Determining a restitution amount.
> After completing the determination required under subparagraph (A), the court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000.
>
> (C) Termination of payment.—
> A victim's total aggregate recovery pursuant to this section shall not exceed the full amount of the victim's demonstrated losses.  After the victim has received restitution in the full amount of the victim's losses as measured by the greatest amount of such losses found in any case involving that victim that has resulted in a final restitution order under this section, the liability of each defendant who is or has been ordered to pay restitution for such losses to that victim shall be terminated.   The court may require the victim to provide information concerning the amount of restitution the victim has been paid in other cases for the same losses.

Pursuant to 18 U.S.C. § 2259(c)(3), "trafficking in child pornography" means any "conduct proscribed by section 2251(d), 2252, 2252A(a)(1) through (5), 2252A(g)," which generally involve transportation, receipt, distribution, and possession of child pornography. Here, the defendant was convicted of a production of child pornography offense under section 2251(a) relating to Victim 1, not a "trafficking in child pornography" offense, but was also convicted of a possession of child pornography offense under section 2252A(a)5)(B), which is a "trafficking in child pornography" offense. Moreover, in the plea agreement, the defendant agreed to provide restitution to all victims of his conduct.

<strong><u>FACTUAL BACKGROUND</u></strong>

On April 15, 2025, the defendant appeared before this Court and pled guilty to Count 1 and Count 10 of the Indictment, charging violations of Title 18, United States Code,

2

Sections 2251(a) and 2252A(a)(5)(B). *See* Dkt. 42. In the plea agreement, the defendant agreed to pay restitution to all victims, including the victims of dismissed counts. *See* Dkt. 42, ¶¶ 29-30. The defendant also acknowledged that 18 U.S.C. § 2259 requires the Court to order a mandatory minimum of $3,000 in restitution to the victims. *Id.* As noted above, Victim 1 has submitted a request seeking restitution based on the impact of the defendant's criminal conduct on her. Therefore, consistent with the analysis set forth in section 2259, the government requests that the Court order the defendant to pay restitution to Victim 1 in the amount requested of $527,105 to $746,779.

**ARGUMENT**

**I.**    **18 U.S.C. § 2259 MANDATES THAT DISTRICT COURTS ORDER RESTITUTION IN AN AMOUNT OF NO LESS THAN $3,000.**

In child pornography cases, the Court *must* order restitution to any person "harmed as a result of" a defendant's crime pursuant to 18 U.S.C. § 2259. *See* 18 U.S.C. § 2259(a), (c); *see also United States v. Monzel*, 930 F.3d 470, 476 (D.C. Cir. 2019); *United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015) ("Pursuant to 18 U.S.C. § 2259, the victims of certain federal crimes, including possession of child pornography, are entitled to mandatory restitution."). Restitution includes "the full amount of the victim's losses," which may include any costs incurred by the victim for:

(A) Medical services relating to physical, psychiatric, or psychological care;

(B) Physical and occupational therapy or rehabilitation;

(C) Necessary transportation, temporary housing, and child care expenses;

(D) Lost income;

(E) Attorneys' fees, as well as other costs incurred; and

(F) Any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(a), (b)(3); *see also Hite*, 113 F. Supp. 3d at 94.

Prior to December 2018, district courts grappling with determining a restitution amount turned to *Paroline v. United States*, 134 S. Ct. 1740 (2014) for guidance. There, the Supreme Court faced a circuit split over the interpretation of 18 U.S.C. § 2259, specifically over "how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in the pornographic materials possessed." *Paroline*, 134 S. Ct. at 1716. In *Paroline*, the defendant possessed two images of the victim who was seeking restitution. The Court promulgated a three-step approach to answering this question:

First, the Court held that because the statute defined a "victim" as someone "harmed as a result" of the offense, restitution under § 2259 was proper "only to the extent the defendant's offense proximately caused a victim's losses." *Id*. at 1722.

Second, the Court held that "proximate cause" under § 2259 did not require strict but-for causation. *Id*. at 1726-27. Recognizing that under the circumstances of most child pornography possession cases – where losses resulted from harm caused by the trafficking of a victim's images by numerous "geographically and temporally distant offenders acting independently, and with whom the defendant had no contact," *id*. at 1725, – the Court held:

> In this special context, where it can be shown that a defendant possessed a victim's images and that a victim had outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id*. at 1727. The Court stated that where the victim's losses are "the product of the acts of thousands of offenders," a restitution order should not be "too severe" but must not be merely "a token or nominal amount." *Id.* The Court rooted its rationale, in part, in the notion that a

4

restitution order under § 2259 serves "twin goals," the first being to "help the victim achieve eventual restitution for all her child-pornography losses" and second to "impress upon offenders the fact that child pornography crimes, even simple possession, affect real victims." *Id.*

Third, the Court provided sentencing courts the following guidance for how to determine the proper amount of restitution under this standard. *Id.* The Court noted that a sentencing court's goal should be to assess "the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses," taking into account any "available evidence." *Id.* at 1727-28. The Court emphasized that there is no "precise mathematical inquiry" governing this determination and that district courts must exercise "discretion and sound judgment" in fashioning restitution awards. *Id.* at 1728. Moreover, the Court suggested several factors to be considered, including: (1) the number of defendants convicted of possessing the victim's images; (2) the number of future offenders likely to be caught and convicted; (3) whether the defendant had any role in the initial production of the images; (4) whether the defendant reproduced or distributed the images; (5) how many images the defendant possessed; and (6) "other facts relevant to the defendant's relative causal role." *Id.* "These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense." *Id.*

In December 2018, however, Congress amended 18 U.S.C. § 2259 to both codify *Paroline*'s basic approach and to set a restitution floor of $3,000. *See* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299, 132 Stat. 4383

(2018). In doing so, Congress made certain findings establishing *per se* harm stemming from child pornography offenses. Those findings included the following:

(1) The demand for child pornography harms children because it drives production, which involves severe child sexual abuse and exploitation.

(2) The harms caused by child pornography begin, but do not end, with child sex assault because child pornography is a permanent record of that abuse and trafficking in those images compounds the harm to the child.

(3) In *Paroline v. United States* (2014), the Supreme Court recognized that "every viewing of child pornography is a repetition of the victim's abuse."

(4) The American Professional Society on the Abuse of Children has stated that for victims of child pornography, "the sexual abuse of the child, the memorialization of that abuse which becomes child pornography, and its subsequent distribution and viewing become psychologically intertwined and each compound the harm suffered by the child-victim."

(5) Victims suffer continuing and grievous harm as a result of knowing that a large, indeterminate number of individuals have viewed and will in the future view images of their childhood sexual abuse. Harms of this sort are a major reason that child pornography is outlawed.

(6) The unlawful collective conduct of every individual who reproduces, distributes, or possesses the images of a victim's childhood sexual abuse plays a part in sustaining and aggravating the harms to that individual victim.

(7) It is the intent of Congress that victims of child pornography be compensated for the harms resulting from every perpetrator who contributes to their anguish. Such an aggregate causation standard reflects the nature of child pornography and the unique ways that it actually harms victims.

Pub.L. 115-299, § 2, Dec. 7, 2018, 132 Stat. 4383. By making these findings, and requiring a $3,000 statutory minimum restitution payment, Congress built a presumption of harm into the statute, removing the onus from the victims to establish that any one defendant viewing their images contributed to their harm. Rather, if victims feel that a certain defendant contributed more egregiously to their harm, they can make that showing, consistent with

*Paroline*, and request a restitution amount higher than $3,000. District courts, then, must follow *Paroline* to determine whether a defendant must pay an amount higher than $3,000.

*United States v. Clemens*, 990 F.3d 1127 (8th Cir. 2021) illustrates the post-December 2018 amendment landscape well. There, the defendant argued that "(i) that $3,000 exceeds the full amount Clemens can be responsible for because all but $800 of the claimed losses occurred before he committed his child pornography trafficking offense, and (ii) the district court failed to 'disaggregate' the losses caused by his possession and use of Tara's images from the damages caused by their initial production, a 'complication' the Supreme Court noted but 'set aside' in *Paroline*." *Id.* at 1130. The Eighth Circuit, however, rejected the defendant's arguments, holding:

> We reject both these arguments because they are contrary to the plain meaning of § 2259 as amended. The statute now explicitly defines "the full amount of the victim's losses" as the losses "incurred ... or projected to be incurred ... *as a result of the trafficking in child pornography depicting the victim*," not just the losses Clemens can be responsible for. § 2259(b)(2)(A) (emphasis added). After determining that amount, the amended statute directs that the court "shall order" restitution "in an amount that reflects the defendant's relative role ... but which is no less than $3,000," so long as the victim's "total aggregate recovery" does not exceed her losses. § 2259(b)(2)(B)-(C). Clemens did not refute the government's detailed evidence that Tara has incurred more than $3,000 in total losses resulting from trafficking her images, and there is no evidence her "total aggregate recovery" has exceeded her total losses. Thus, on this record, the district court did not err in imposing the mandatory minimum restitution award. The *Paroline* factors no doubt remain relevant in determining whether a defendant's "relative role in the causal process" supports an award of more than $3,000 under amended § 2259(b)(2)(B). In such a case, how to determine the defendant's "relative role" and whether disaggregation applies to this determination under the amended statute are questions we leave for another day.

*Id.* (emphasis in original). In essence, through the amended statute, Congress directs

> "district courts to use a two-step method to determine the restitution amounts for defendants found trafficking in child pornography. It directs that 'court[s] shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in

child pornography depicting the victim.' § 2259(b)(2)(A).  After that, 'the court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000.'  *Id.* § 2259(b)(2)(B)."

*United States v. Jones*, 815 F. App'x 870, 883 (6th Cir.), cert. denied, 141 S. Ct. 833, 208 L. Ed. 2d 409 (2020).

Here, the material produced, distributed, and possessed by the defendant included images of child pornography that depicted Victim 1. Therefore, based on the provisions of 18 U.S.C. § 2259 and the agreement the defendant made in the plea agreement, the Court shall determine the full amount of Victim 1's losses and shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is not less than $3,000.  *See* 18 U.S.C. § 2259(b)(2). Victim 1, through her attorney, has submitted a detailed request for restitution, which outlines the extensive losses Victim 1 has suffered because of the defendant's criminal conduct, which ranges from $527,105 to $746,779. It should be noted that the parties are currently attempting to come to an agreement regarding restitution in this matter, and the parties will update the Court if an agreement is reached. However, should an agreement not be reached, the government would request that the Court order restitution to Victim 1 in the amount of $527,105 to $746,779, and should the Court believe that more information is needed prior to imposing restitution, the government requests the ability to present the testimony of witnesses at a bifurcated restitution hearing.

## CONCLUSION

The government respectfully requests that the Court order the defendant to pay restitution to Victim 1 in the amount of $527,105 to $746,779, or in the alternative, to hold a restitution hearing.

DATED:  Buffalo, New York, May 22, 2026.


MICHAEL DIGIACOMO
United States Attorney

BY:    s/ AARON J. MANGO
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5882